1

1          UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF NEW YORK
2
   - - - - - - - - - - - - - - -X
3  JOSEPH SAFDIEH,                : 20-CV-3073 (CBA)
                                  :
4            Plaintiff,           :
                                  :
5        -against-                : United States Courthouse
                                  : Brooklyn, New York
6  CITIBANK, N.A. and HSBC BANK   :
   USA, N.A.,                     :
7                                 : Friday, January 15, 2021
            Defendants.           : 2:00 p.m.
8  - - - - - - - - - - - - - - -X

9

           TRANSCRIPT OF CIVIL CAUSE FOR ORAL ARGUMENT
10        BEFORE THE HONORABLE CAROL BAGLEY AMON
             UNITED STATES DISTRICT JUDGE
11

12              A P P E A R A N C E S :

13 For the Plaintiff       LAW OFFICE OF SAMUEL KATZ, PLLC
   and Counter             4533 16th Avenue
14 Defendant:              Brooklyn, New York 11204
                           BY:  SAMUEL KATZ, ESQ.
15

16 For the Defendant,      ZEICHNER, ELLMAN & KRAUSS, LLP
   Cross-Claimant, and     575 Lexington Avenue
17 Counter Claimant        New York, New York 10022
   Citibank, N.A.:         BY:  BRUCE S. GOODMAN, ESQ.
18

19
   For the Defendant,      PHILLIPS LYTLE, LLP
20 Cross-Defendant and     125 Main Street
   Counter Defendant       Buffalo, New York 14203
21 HSBC Bank USA,          BY:  PRESTON L. ZARLOCK, ESQ.
   N.A.:
22                                        AND

23                         ANTHONY DIPAOLO, PC
                           235-07 Braddock Avenue
24                         Queens Village, New York 11428
                           BY:  ANTHONY DIPAOLO, ESQ.
25

```
                        Proceedings                    2
```

1           A P P E A R A N C E S  (CONTINUED)

2

3    Court Reporter:      DAVID R. ROY, RPR
                          225 Cadman Plaza East
4                         Brooklyn, New York 11201
                          drroyofcr@gmail.com
5

6    Proceedings recorded by Stenographic machine shorthand,
     transcript produced by Computer-Assisted Transcription.
7

8

9                   P R O C E E D I N G S

10

11                      --oo0oo--

12

13

14          (All participants appearing via telephone

15   conference.)

16          THE COURT:  All right.  Good afternoon.  This is

17   Judge Amon.

18          Ms. Morris, do you want to call the case for us,

19   please.

20          THE COURTROOM CLERK:  This is Case Number

21   20-CV- 3037, Safdieh versus Citibank, et al. on for an oral

22   argument or HSBC's motion to dismiss.

23          Representing Plaintiff Joseph Safdieh is

24   Samuel Katz.  Representing Defendant and Cross-Claimant

25   Citibank is Bruce Goodman --

Proceedings                                                3

1          THE COURT:  Okay.

2          THE COURTROOM CLERK:  -- and representing

3   Defendant and Cross-Defendant HSBC are Preston Zarlock and

4   Anthony DiPaolo.

5          THE COURT:  All right.  Thank you.

6          These are motions made by HSBC.  The first motion

7   is to dismiss against the plaintiff's claim for conversion,

8   and the second is to dismiss, as I understand it, Citibank's

9   cross-claim.

10          Ms. Zarlock, I note you will be dealing with the

11   conversion claim --

12          MR. ZARLOCK:  That is correct, Your Honor.

13          THE COURT:  -- and Mr. DiPaolo with the

14   cross-claims; is that correct?

15          MR. DIPAOLO:  That is correct, Your Honor.

16          THE COURT:  All right.

17          Mr. Zarlock, do you want to be heard first of all

18   on the plaintiff's conversion claim?

19          MR. ZARLOCK:  Yes, thank you, Your Honor.  I will

20   try to be both clear and brief in consideration of the

21   briefing that has already by providing to the Court.

22          There is a sole claim in the complaint against

23   HSBC, which is the conversion --

24          (Pause in proceedings.)

25          MR. ZARLOCK:  There is a sole claim against HSBC

Proceedings                                    4

1    in the complaint which is a claim for conversion.  The facts

2    are essentially undisputed.  HSBC is the mortgagee for the

3    plaintiff on a defaulted mortgage in an action that's

4    already past summary judgment in favor of HSBC in state

5    court.  After summary judgment, there was a property loss in

6    January of 2019 and a joint check was made payable in the

7    amount of $233,000, which I'll refer to as the AIG check,

8    made jointly payable to Plaintiff and HSBC.  That check was

9    deposited by Plaintiff without HSBC's endorsement in the

10   Citibank account and paid.  Thereafter, the account was paid

11   down -- or excuse me, the account was drawn down to about

12   $107,000.  A check for the balance was issued by Citi to

13   Plaintiff, but apparently thereafter stopped.  In the

14   interim, HSBC, having discovered that the check was paid, a

15   joint check paid without its endorsement, made claim against

16   Citibank and Citibank paid HSBC in full and presented HSBC

17   with a settlement agreement in return for that payment.

18         Now, the sole claim against HSBC is conversion,

19   but the only -- it's undisputed that the only monies which

20   HSBC received was the Citibank check.  That check was

21   payable only to Citi, only to HSBC.  So therefore, for four

22   reasons there can be no claim by Plaintiff against HSBC for

23   conversion.  First of all, Plaintiff was not a payee on the

24   Citibank check.

25         Secondly, based on the authority of the

Proceedings                                               5

1   *Barclays Bank* case, Plaintiff had no possession of the check

2   which was -- and the check was not payable to it; so

3   therefore, it doesn't have a claim for conversion.

4          Third, it is well settled that funds in a bank

5   account cannot be converted.  They're basically essentially

6   a debit/credit system.  And this case is even farther afield

7   from the normal situation.  The case most on point is the

8   *McBride* case that's cited in our brief several times where

9   there were several levels of payment, and ultimately you

10  can't trace funds like that for conversion.  There must be a

11  distinct source of funds even when funds, you know, can be

12  converted.

13         And finally, ultimately, they don't have any

14  right, Plaintiff has no right to the proceeds, it's a

15  defaulted mortgage.  Under the *Builders* case cited in our

16  brief, it is up to the lender how to apply those proceeds.

17  And so ultimately they wouldn't have a claim to property,

18  which would be required for any conversion claim.

19         So for any or all of those reasons, the complaint

20  should be dismissed against HSBC.

21         THE COURT:  You are talking about a motion to

22  dismiss.  And just simply with regard to your last

23  argument --

24         MR. ZARLOCK:  Yes, Your Honor.

25         THE COURT:  -- this foreclosure and all of that

Proceedings                                           6

1  information is not on the face of the complaint; is that

2  correct?

3           MR. ZARLOCK:  It is not, Your Honor.

4           THE COURT:  So you --

5           MR. ZARLOCK:  The Court can take judicial notice

6  on motions to dismiss, and we cited that in our brief

7  related to state court and other proceedings.

8           THE COURT:  All right.

9           Let me ask:  Mr. Katz, is it basically undisputed

10 that at the time of the property damage and when the money

11 was issued that it had been foreclosed, the mortgage had

12 been foreclosed?

13          MR. KATZ:  Good afternoon, Your Honor.  Samuel

14 Katz.

15          THE COURT:  Good afternoon.

16          MR. KATZ:  I don't know the answer to that

17 question.  I'm not foreclosure counsel in the foreclosure

18 case and I don't know whether at the time of the loss, the

19 foreclosure was ready to be commenced.  I certainly don't

20 think that summary judgment was already granted to the bank

21 at that stage, but I don't know this -- in fact, I will

22 defer to Mr. -- to --

23          THE COURT:  What is your -- well, I am not quite

24 sure that I understand your theory of conversion.  The check

25 from Citibank for the $33,000 was issued to HSBC.  That was

```
                         Proceedings                    7
```

1   not a check that your client was named on or anything else.

2   So what was converted?  Are you saying that --

3            MR. KATZ:  That's correct, Your Honor.

4            THE COURT:  Are you saying that that check -- is

5   it not your theory that that check was converted or that --

6   well, tell me what was converted under your theory.  I am

7   not sure --

8            MR. KATZ:  Our theory is --

9            THE COURT:  -- that I quite understand what you

10  are --

11           MR. KATZ:  Our theory is that -- I apologize,

12  Your Honor.

13           Our theory is that the funds were spent and that

14  was converted.  It's undisputed, Your Honor, that

15  $233,000 --

16           (Audio cuts out briefly.)

17           THE COURT:  Let me just ask -- and I'm sorry,

18  Mr. Katz -- that the funds that were originally in your

19  client's account were converted?  Is that what was

20  converted?

21           MR. KATZ:  No.  No, our claim is that the AIG

22  check my client had deposited into his bank account only

23  with his endorsement, which Citibank accepted, that money

24  was then sent over to HSBC when they made their warranty

25  claim.

```
                        Proceedings                    8
```

1              THE COURT:  Okay.

2              MR. KATZ:  Those funds were to be, at the very

3       least --

4              (Audio cuts out briefly.)

5              MR. KATZ:  -- payable to both HSBC and my client,

6       because they were the AIG funds.

7              THE COURT:  Your client was --

8              MR. KATZ:  And by virtue of --

9              THE COURT:  I apologize for interrupting you.

10             Let me ask you something, Mr. Katz.

11             MR. KATZ:  Yes, Your Honor.

12             THE COURT:  Was there other money in your client's

13      account or was this is the only money in your client's

14      account?

15             MR. KATZ:  I believe this was the only money in my

16      client's account at the time that he got the AIG check.  But

17      I do not know this for sure.

18             (Audio cuts out briefly.)

19             MR. KATZ:  We have not done extensive discovery

20      yet.  We have done very little discovery in this case.  I

21      don't know this for sure at this point.  But if it was not

22      the only money in his account --

23             (Audio cuts out briefly.)

24             MR. KATZ:  -- it was definitely the majority of

25      the amount of money in his account by far, Your Honor.

Proceedings                                    9

1          THE COURT:  Well, he already spent -- by his own

2    admission if we do the math, he already spent $100,000 of

3    money that even he claims belonged to both he and AIG.

4    Right?

5          MR. KATZ:  Well, he claims that the money belongs

6    to him, but he does admit that it was payable to both, and

7    that it --

8          (Audio cuts out briefly.)

9          MR. KATZ:  -- required HSBC's endorsement.

10          THE COURT:  All right.

11          MR. KATZ:  But I don't think that --

12          (Audio cuts out briefly.)

13          MR. KATZ:  -- you know, the facts contradict each

14    other.  So he contends today that the money --

15          (Audio cuts out briefly.)

16          THE COURT:  Mr. Katz --

17          MR. KATZ:  -- belongs to HSBC --

18          THE COURT:  -- for some reason -- Mr. Katz, I'm

19    sorry, but how are you calling in?  Because your voice keeps

20    breaking up, sir.  It is very difficult for me to understand

21    you.

22          MR. KATZ:  I'm sorry.  I'm calling in on a

23    landline.

24          (Pause in proceedings.)

25          MR. KATZ:  Is this better?

```
                          Proceedings                    10
```

1          THE COURT:  Yes, uh-huh.

2          MR. KATZ:  Okay.

3          THE COURT:  It is much better.

4          MR. KATZ:  I apologize.  I picked up the receiver.

5          THE COURT:  Okay.

6          MR. KATZ:  All right.  So as I was saying, it's

7    the funds that HSBC currently holds --

8          (Audio cuts out briefly.)

9          MR. KATZ:  -- that HSBC admits --

10         (Audio cuts out briefly.)

11         MR. KATZ:  -- either that they're applying it --

12         (Audio cuts out briefly.)

13         MR. KATZ:  --  to my client's account --

14         THE COURT:  You are still breaking up badly.  I do

15   not know what the problem with your correction is, sir.

16         MR. KATZ:  I am going to call in from another

17   phone.

18         Can I do that?

19         THE COURT:  Allison, will that work?

20         THE COURTROOM CLERK:  Yes.  He can hang up and

21   then just dial in on the same number on a different phone.

22         THE COURT:  Okay.

23         MR. KATZ:  Okay.  Your Honor, I just need one

24   moment for that.

25         THE COURT:  Okay.  Sure.

```
                        Proceedings                        11
```

1          MR. KATZ:  I apologize.  Thank you.

2          THE COURT:  That's all right.

3          (Pause in proceedings.)

4          MR. KATZ:  I'm back, Samuel Katz.

5     Does everyone hear me now?

6          THE COURT:  Yes.  Hopefully this will go better.

7          MR. KATZ:  I apologize.

8          THE COURT:  That's okay.

9          But I do not think you have answered my question.

10    Are you contending that it was the money deposited in your

11    account that when the AIG check was negotiated, that it was

12    that money in your account that was converted by HSBC; is

13    that your contention?

14         MR. KATZ:  That's my contention as to part of the

15    money, the part that was still in my client's account,

16    Your Honor, which was taken out by Citibank and given to

17    HSBC as part of that $233,000 check, my conversion claim is

18    on those funds, yes.

19         THE COURT:  So you are only holding HSBC on your

20    conversion claim responsibile for the hundred-and-some

21    thousand dollars?

22         MR. KATZ:  No.  We're holding them responsibile on

23    the entire amount because the entire amount is from the

24    original AIG check that should have been earmarked to both

25    my client and HSBC.

Proceedings                                          12

1          THE COURT:  But how do you -- you have got a

2     conversion claim.  How do you allege -- you are not being

3     consistent.  You said, at one point we are only alleging

4     that what was converted was the hundred thousand which you

5     say was used by Citibank, but Citibank did not, you know, go

6     to your account, you know, and take out -- it is not a

7     discrete sum.  The problem that you have is that you are

8     dealing with funds deposited in a bank account, and you are

9     not dealing with any specific set of money.  It is not like

10    you are saying this is a car and then they transferred the

11    car to HSBC, and HSBC converted the car.  I mean, the

12    problem that you have is the spongeability of money.  So I

13    do not know how you possible make out a conversion claim

14    against HSBC.

15          MR. KATZ:  I understand, Your Honor.

16          The point is that HSBC was using this money to

17    apply to my client's mortgage account that they had with

18    them.  They didn't take it for themselves.  It's not the

19    typical, you know, conversion claim where the person is

20    taking the money from one person and moving it to another

21    person and we're trying to get that money back now from that

22    other person.  It's still in my client's account, and for

23    that reason --

24          THE COURT:  That is a whole new theory --

25          MR. KATZ:  Yes.

```
                          Proceedings                    13
```

1              THE COURT:  -- that I think --

2              MR. KATZ:  So we -- we --

3              THE COURT:  -- you have just articulated -- I'm

4    sorry.  Go ahead.

5              MR. KATZ:  This was articulated in our memorandum

6    of law, Your Honor.

7              THE COURT:  It was?

8              MR. KATZ:  Yes.

9              THE COURT:  Do you want to respond to that,

10   Mr. Zarlock?

11             MR. ZARLOCK:  No, to me it wasn't articulated in

12   the memorandum of law, and more importantly, in the

13   complaint.

14             And if I may address one kind of related issue

15   that you raised, Your Honor?

16             THE COURT:  Yes, please.

17             MR. ZARLOCK:  In our reply memorandum of law and

18   also in our initial memorandum of law, and also we've cited

19   *Daniels versus U.S. Bank National Association* at Page 12 of

20   my rely, just that the Court may take judicial notice of

21   state court proceedings without converting a motion to

22   dismiss into a motion for summary judgment.  The order for

23   summary judgment was granted in 2018, essentially almost a

24   full year before the loss and the AIG check.  So that, I

25   think, could be taken judicial notice of.

1        THE COURT:  But your argument does not depended on

2   that?

3        MR. ZARLOCK:  No, it does not.  As the Court

4   correctly summarized, you can't have conversion for funds in

5   a bank account.  And it's even more attenuated here because

6   this was something Citibank paid us, not he paid directly to

7   them, so...

8        THE COURT:  Yes.  I am going to grand HSBC's

9   motion to dismiss the conversion claim --

10        MR. ZARLOCK:  Thank you.

11        THE COURT:  -- on the facts in the complaint there

12   is no conversion claim.

13        So do you want to be heard further on your

14   cross-claims?  That is Mr. DiPaolo, I guess, who is going to

15   talk about the cross-claims, and then Mr. Goodman will

16   address those from Citibank's perspective.

17        MR. ZARLOCK:  Thank you, Your Honor.

18        THE COURT:  Okay.

19        Mr. DiPaolo?

20        MR. DIPAOLO:  Yes, Your Honor, thank you.  This is

21   Anthony DiPaolo.

22        THE COURT:  I'm sorry.  I mispronounced your name.

23   It is DiPaolo?

24        MR. DIPAOLO:  DiPaolo, yes, Judge, no apology

25   necessary.

Proceedings                                    15

1          THE COURT:  I should have remembered that.

2          MR. DIPAOLO:  Thank you.  You're not the first

3    person to pronounce it.  It's multiple vowels, so...

4          THE COURT:  I have lived long enough in Brooklyn

5    that I should know DiPaolo.  So I really do just apologize

6    to you.

7          MR. DIPAOLO:  Not a problem.  Not a problem.

8          THE COURT:  Thank you.

9          MR. DIPAOLO:  But in any event, as it relates to

10   HSBC's cross-motion to -- or excuse me, HSBC's motion to

11   dismiss the cross-claims of Citibank, I'm going to rely on

12   Mr. Zarlock's, you know, recitation of the facts in order to

13   be brief here, which are not in dispute.

14          As it relates to Citibank, what is most important

15   is that when this check was issued, the AIG check, HSBC did

16   not endorses the check.  That is undisputed.  And when HSBC

17   was made aware of that, they immediately made a claim to

18   Citibank in order to recover the proceeds of the check.

19   It's a UCC claim.  And there was a full negotiation between

20   HSBC's in-house counsel and Citibank's in-house counsel

21   where after some communications, they ultimately -- Citibank

22   ultimately did agree to refund the funds to HSBC because

23   they recognized that under the UCC, if there are not two

24   endorsements, then the non-endorsement payee is entitled to

25   the face amount of the check.  So recognizing that issue,

Proceedings                                       16

1    Citibank in house drafted a settlement agreement of release

2    prepared by their in-house counsel, tendered it to HSBC, it

3    was signed, and they tendered a check to HSBC.

4            Now, those facts are important because the

5    cross-claims are not applicable because of the

6    Voluntary Payment Doctrine.  So Citibank had a full

7    knowledge of the facts of the action.  They elected to pay.

8    They did not litigate.  There was no reservation of rights.

9    There was no protest, no such language anywhere in the

10   complaint, the cross-claims, the emails among counsel

11   or persons --

12           THE COURT:  Let me just ask you, though.  Is that

13   all apparent on the face of the cross-complaint?

14           MR. DIPAOLO:  Well, Your Honor --

15           THE COURT:  You are citing a lot of facts, but

16   those are facts that I am not sure that -- I mean, you are

17   moving to dismiss on this?

18           MR. DIPAOLO:  Correct.

19           THE COURT:  And those are not on the -- the facts

20   that you have recited about the settlement and all of that,

21   they are not on the face of the complaint anywhere, are

22   they, or are they?

23           MR. DIPAOLO:  They're -- some of them are --

24           THE COURT:  On any of the claim or cross-claim or

25   anything?

Proceedings                                    17

1      MR. DIPAOLO:  No -- well, some the facts are in

2 the complaint.  There's allegations that the AIG check was

3 not endorsed and that it was paid over to HSBC.  Certainly

4 we can use the document, the settlement agreement because

5 it's related to the allegations in the cross-claim, so that

6 can be utilized as an integral part of the allegations of

7 the complaint as to why the check was paid over to HSBC.

8 And that I don't believe is in dispute.

9      THE COURT:  Okay.  But the terms that --

10      MR. DIPAOLO:  Certainly, the Court --

11      THE COURT:  I mean, the Voluntary Payment Doctrine

12 is an affirmative defense, right, and they are not required

13 to dispute an affirmative defense on the face of a

14 cross-claim.  So how can I rely on the

15 Voluntary Payment Doctrine?

16      MR. DIPAOLO:  Well, again, the Court can certainly

17 consider the documents referenced in the complaint.  And it

18 is clear that all payments were made voluntarily, so how can

19 they just basically vacate their own document?  And

20 nevertheless, even if the Voluntary Payment Doctrine is not

21 applicable, as the Court would say, then it's clear that the

22 cross-claims cannot stand because they're barred by the UCC.

23 It's clear on the UCC-3116 that the check needs to be

24 endorsed by both parties, and that if because, you know,

25 Citibank deposited the check without the endorsement,

Proceedings                                    18

1  they're liable to HSBC for the face amount of the check.  I

2  don't think that can be disputed.

3          THE COURT:  Well, as to that point, Mr. Goodman,

4  how do you respond to that?

5          (No audible response.)

6          THE COURT:  Mr. Goodman?

7          MR. GOODMAN:  I'm sorry, Your Honor, Bruce

8  Goodman.  I had it on mute so as not to disturb anyone else.

9          THE COURT:  Okay.

10         MR. GOODMAN:  I apologize.

11         THE COURT:  Go ahead.

12         MR. GOODMAN:  What Counsel's ignoring, and we

13 cited in our memorandum of law, is at

14 Uniform Commercial Code 3201 in the case of *Ellinger versus*

15 *Bank of New York,* that, A paying bank must be afforded an

16 opportunity of discovery to establish the existence that

17 notwithstanding an absence of endorsement that the co-payee

18 of the check was authorized by the other co-payee to deposit

19 the check.

20         And on the pleadings and on the face of this

21 complaint, that's exactly Plaintiff's claim.  Plaintiff

22 claims that he was authorized to deposit this check,

23 notwithstanding the lack of HSBC's endorsement.  And on --

24         THE COURT:  Excuse me.  He does not claim HSBC

25 authorized --

Proceedings                                    19

1          MR. GOODMAN:  He alleged that HSBC knew Plaintiff

2    had a legal possessory --

3          THE COURT:  -- him to --

4          MR. GOODMAN:  The complaint alleges that HSBC knew

5    Plaintiff had a legal possessory interest in the check.

6    That's alleged at Paragraph 49.  And HSBC hasn't presented

7    any evidence on the motion disputing that fact, such as, you

8    know, an affidavit or documentary evidence or otherwise that

9    Plaintiff wasn't authorized.

10         THE COURT:  There is an allegation at

11   Paragraph 32, I think, of the cross-claim where you said

12   that it is alleged that there was not authorization by HSBC

13   for him to sign the --

14         MR. GOODMAN:  Right.  We're entitled to --

15         THE COURT:  -- the check that --

16         MR. GOODMAN:  -- we're entitled to plead in the

17   alternative, certainly.

18         THE COURT:  That is not pleading in the

19   alternative.  That is a fact.  You cannot plead facts in the

20   alternative.  I mean, the --

21         MR. GOODMAN:  Well, Your Honor, we -- that gets to

22   the point, we don't know what the facts are here yet.  It

23   would be premature to grant HSBC's motion to dismiss the

24   cross-claims because the position -- until the Court

25   determines Plaintiff's claim, HSBC -- our cross-claims

Proceedings                                    20

1   against HSBC are valid.  If the Court determines

2   ultimately -- if the Court can determine one thing -- one of

3   two things at the end of this case:  One, that the plaintiff

4   was entitled to these proceeds.  And if that is the case and

5   we are -- and Citibank, which is now in a loss position of

6   $125,000, would have to pay over another $107,000 to

7   Plaintiff, both Plaintiff and HSBC will have received from

8   Citibank $233,000, and Citibank would be in a loss position

9   at that point of about $340,000.  And that can't be.

10          So if the Court determines that Plaintiff is

11  entitled to the proceeding of this check, Citibank had

12  stated claims for unjust enrichment and indemnification

13  against HSBC.  Alternatively, if the Court ultimately finds

14  that Plaintiff was not entitled to the proceeds of this

15  check, Citibank succeeds on its cross-claim -- or excuse me,

16  it's counterclaim as against Plaintiff for a breach of a

17  warranty and would not have claims for unjust enrichment or

18  indemnification against HSBC.  HSBC would be out of the

19  case.

20          But that can't be determined on these pleadings,

21  and it can't be that at the end of the day both HSBC gets

22  $233,000 from Citibank and Plaintiff gets $233,000 from

23  Citibank.  It just -- it would be inequitable pursuant to

24  the unjust enrichment doctrine, and we would be entitled in

25  that case to indemnification from HSBC because we paid over

Proceedings                               21

1   the proceeds of the check to them based on their

2   representation that Plaintiff was not entitled to it.

3            THE COURT:  Indemnification is based an a

4   vicarious liability.  There is no claim here that you were

5   vicariously liable.  The claim is that you were directly

6   liable by the plaintiff.

7            MR. GOODMAN:  Well, no --

8            THE COURT:  How do you have an indemnification

9   claim?

10           MR. GOODMAN:  Our cross-claim against HSBC is

11  for common -- the indemnification claim is a common-law

12  indemnification claim, which allowed the party that's been

13  compelled to pay for the wrong of another to recover from

14  the wrongdoer for damages it paid to the injured party.  And

15  in this case, if the Court ultimately determines that

16  Plaintiff is entitled to the proceeds of the AIG check, then

17  it will also have to have been -- it will need to determine

18  that HSBC misrepresented its entitlement to the check --

19           THE COURT:  Okay.

20           MR. GOODMAN:  -- and it was not based on that

21  representation that Citibank paid those funds over to HSBC.

22           THE COURT:  Look, you have alleged at

23  Paragraph 32, Plaintiff deposited the April 15th check to

24  the credit of this account without HSBC's required

25  endorsement or authorization.  How do you get around the

Proceedings                                    22

1   plain language, too, of the UCC that you cannot negotiate a

2   check without both payees signing it; how do you get past

3   that?

4          MR. GOODMAN:  Well, Your Honor --

5          THE COURT:  There is no allegation anywhere that

6   HSBC authorized the plaintiff, you know, to negotiate this

7   on his own.  There is nothing like that.  Plaintiff does not

8   say that.  Plaintiff does not make the claim that HSBC said

9   it was fine with them if they took some money from the

10  check.  They do not make that argument.

11         MR. GOODMAN:  Well, Plaintiff alleges in the

12  complaint at Paragraph 49 that HSBC knew Plaintiff had a

13  legal possessory interest in the check.

14         THE COURT:  So what?  That does not mean that HSBC

15  did not.

16         Mr. DiPaolo, does Counsel for HSBC wish to respond

17  to the argument --

18         MR. DIPAOLO:  Yes, Judge.

19         THE COURT:  -- by Citibank?

20         MR. DIPAOLO:  First as it relates Counsel's

21  UCC 3210 argument and the case of *Ellinger*, we respond to

22  that in great detail in our reply brief on Pages 10 and 11.

23  And as Your Honor indicated, that's serious inapposite.

24  UCC 3201 only permits the transfer without a proper

25  endorsement where the non-signing payee authorizes the

Proceedings                                            23

1    transfer.  As noted, there are no allegations, there is no

2    dispute that HSBC did not authorize this.  This is the whole

3    basis of the issues that we're having with the plaintiff.

4    So *Ellinger* is just not applicable here.  It's inapposite,

5    and that is fully briefed and detailed in our reply brief.

6            Second, as it relates to the indemnification

7    claim, we also discuss that in our brief as an active

8    participant in the claimed wrong, Citibank can claim

9    indemnification.  They're the party that improperly

10   negotiated the check, and now they have their -- we have

11   independent right to recover that.  So any issue they have

12   with Plaintiff is on them.  The fact that they may suffer a

13   loss is unfortunate for Citibank, but it's not a basis for a

14   claim against HSBC.  When they voluntarily paid the check

15   over, they are liable under the UCC.  They acknowledged it,

16   and now they're looking to basically vacate their own

17   settlement agreement because they maybe suffered a loss.

18   But under the UCC, they are directly responsibile and

19   directly liable to HSBC for their own wrongdoing.

20           So under those grounds alone, there is no way

21   around the fact that under the UCC, there is no basis for

22   the cross-claims or indemnification.

23           THE COURT:  All right, Mr. Goodman, did you want

24   to add anything else before we close?

25           MR. GOODMAN:  Your Honor, only that on the

Proceedings                                    24

1   pleadings before the Court, it would be premature to grant

2   HSBC's motion to dismiss their cross-claims.  And Citibank

3   has valid cross-claims until the Court determines that

4   Plaintiff was not entitled to the check proceeds.  And --

5            THE COURT:  Well --

6            MR. GOODMAN:  - in the -- I'm sorry, Your Honor.

7            THE COURT:  No, go ahead.  I'm sorry to interrupt

8   you, Mr. Goodman.

9            MR. GOODMAN:  And concerning the UCC, the first

10  department in the *C.H. Sanders* case was clear that the

11  paying bank must be afforded an opportunity to conduct

12  discover to establish the existence of Plaintiff's

13  entitlement -- and the plaintiff's, in this case,

14  entitlement to the proceeds of the check.

15           THE COURT:  Okay.  I think you miscite that case

16  or improperly rely on that case.

17           I am going to dismiss the cross-claims, but I am

18  not relying on the Voluntary Payment Doctrine because I

19  think that is outside the facts of the complaint.  It relies

20  strictly on the clear authority of the UCC here, so...

21  Citibank negotiated the check.  It is undisputed that they

22  negotiated the check without HSBC's approval.  And so based

23  on that and based on the violation of the UCC, I am going to

24  dismiss the cross-claims.

25           MR. DIPAOLO:  Thank you.

Proceedings                    25

1          THE COURT:  What is the status of the case between

2   Plaintiff -- I guess what we have left now is the plaintiff

3   and Citibank.

4          Has there been any discussion of a resolution of

5   the case between those two entities?

6          MR. GOODMAN:  Your Honor, this is Bruce Goodman.

7          So, number one, Plaintiff served discovery on us

8   to which we responded --

9          THE COURT:  Okay.

10          MR. GOODMAN:  -- and that was pursuant to -- I'm

11   sorry, Your Honor?

12          THE COURT:  Yes, go ahead, Mr. Goodman.

13          MR. GOODMAN:  And that was pursuant to an order

14   issued by the magistrate concerning like a pre-settlement

15   discovery, and I believe there's a discovery offer scheduled

16   in this case in the next several weeks.  I don't have the

17   date in front of me.

18          Concerning settlement, so as I said, right now

19   Citibank is in a loss position of $125,000 -- or more than

20   that.  It's actually the proceeds -- the amount of the

21   proceeds that Citibank paid over to HSBC, you know, which

22   was 107.  And what we would require in order to settle the

23   case is for Plaintiff to reimburse us for our loss.  We have

24   cross -- counterclaims against Plaintiff for that amount.

25   The law is clear, and given the Court's rulings to dismiss

Proceedings                                                    26

1    HSBC -- to dismiss Citibank's cross-claims against HSBC,

2    that Plaintiff improperly deposited this check without

3    HSBC's required endorsement, he breached his warranty, his

4    presentment warranty to the bank by depositing that check

5    and is strictly liable for Citibank's loss occasioned by

6    that presentment breach.

7             So what I anticipate is that if we can't otherwise

8    resolve it, and pursuant to Your Honor's individual rules,

9    we would likely request to make a motion for summary

10   judgment.

11            THE COURT:  Make a motion for summary judgment

12   that you are entitled to money, that Citibank is entitled to

13   money?

14            MR. GOODMAN:  That's right, Your Honor.  Because

15   right now, we're in a loss position of $125,000.  There was

16   $107,000 left --

17            THE COURT:  But Plaintiff --

18            MR. GOODMAN:  -- in the --

19            THE COURT:  Let me ask you this:  Plaintiff put

20   the check in his account --

21            MR. GOODMAN:  Right.

22            THE COURT:  -- and he signed it.

23            MR. GOODMAN:  Right.

24            THE COURT:  Why is the bank not responsible for --

25   perhaps I am wrong about this -- for presentment of the

Proceedings                                      27

1   check if he had signature, right?

2           MR. GOODMAN:  No, that's incorrect, Your Honor.

3   When the payee on a check presents --

4           THE COURT:  Okay.

5           MR. GOODMAN:  -- the check to the bank for

6   deposit --

7           THE COURT:  Right.

8           MR. GOODMAN:  -- pursuant to the UCC, he's making

9   a warranty that the check contains all proper endorsements.

10  And in this case, and now it's a rule -- it's been cited by

11  the Court, he didn't have all proper endorsements;

12  therefore, he breached the presentment warranty, the UCC

13  presentment warranty, and is liable to the bank for the

14  losses that the back sustained as a result of that

15  presentment breach.  That is black-letter UCC law.  In UCC

16  3417 and 4207, A plaintiff is strictly liable for breach of

17  a -- to the bank for breach of a presentment warranty.

18          THE COURT:  Has there been any consideration

19  for --

20          (Pause in proceedings.)

21          THE COURT:  Hello?  Can you hear me?

22          MR. GOODMAN:  I can, Your Honor.

23          THE COURT:  Okay.

24          MR. ZARLOCK:  Yes.

25          MR. DIPAOLO:  Yes, Your Honor.

Proceedings                                    28

1          THE COURT:  All right.

2          Has there been any consideration of everyone just

3    walking away from this?  I do not think Plaintiff has a

4    great case and yours -- Citibank's counterclaims seem

5    equally to be problematic.  Why don't the parties just walk

6    away from this?  It seems like to me that might make sense.

7          Mr. Katz?

8          MR. KATZ:  Yes, Your Honor.

9          THE COURT:  If it all comes out in discovery the

10   way that they are saying, which is the property damaged

11   happened after the default, why does your client -- you are

12   not alleging anywhere that, you know, your client sent money

13   to fix this property, so why would he be entitled to the

14   proceeds of the check?  Why don't both sides just walk away

15   from this?

16         Assuming Plaintiff dismisses the case, is Citibank

17   going to proceed?

18         MR. GOODMAN:  I would have to -- I have not had

19   that discussion with my client, Your Honor.  As I said,

20   right now, we are in a loss position of $125,000.  So I

21   don't know --

22         THE COURT:  Yes, but face it --

23         MR. GOODMAN:  -- whether Citibank --

24         THE COURT:  -- Citibank messed up.  Citibank

25   messed up.  You should not have done that.  You know,

```
                    Proceedings                    29
```

1   somebody should have looked at the back of the check.

2          MR. GOODMAN:  Your Honor --

3          THE COURT:  I do not know why you do not both just

4   decide to walk away and take your marbles and go home.

5          MR. DIPAOLO:  Your Honor --

6          THE COURT:  Yes.

7          MR. ZARLOCK:  -- just for -- what Your Honor

8   referred --

9          THE COURT:  Well, who is speaking?

10          MR. ZARLOCK:  This is Mr. Zarlock from HSBC.

11          THE COURT:  Okay.

12          MR. ZARLOCK:  Do you want HSBC to drop off now,

13   because you are really talking about settling between --

14          THE COURT:  Yes, that is fine.

15          MR. ZARLOCK:  Okay.  All right.  We will drop off

16   now.

17          See you, Tony.

18          THE COURT:  All right.

19          MR. ZARLOCK:  See you, everyone.

20          THE COURT:  Thank you.

21          MR. DIPAOLO:  Take care, everyone.

22          THE COURT:  All right.  Thank you.

23          MR. ZARLOCK:  Uh-huh.  Bye-bye, everyone.

24          (The attorneys for HSBC exit the telephone

25   conference.)

Proceedings                                          30

 1         MR. KATZ:  Your Honor, this is Samuel Katz.
 2   Again, just to respond to what Your Honor was asking me
 3   before.
 4         My client's intention actually is to use the
 5   proceeds to rehab the property so that he could start paying
 6   his mortgage again.  He's not going to pay a mortgage on a
 7   property that's, you know, damaged, that's not liveable,
 8   that's not usable, and he's not going to spend, you know,
 9   $200,000 of his own to rehab a property when he --
10         THE COURT:  I thought the case was foreclosed?  I
11   thought it was in foreclosure?
12         MR. KATZ:  It is in foreclosure.  But if he would
13   have the opportunity to rehab, he would take it out of
14   foreclosure.  He would reinstate it.
15         THE COURT:  Is that possible that that can happen
16   now?
17         MR. KATZ:  That is definitely possible if my
18   client is able to use those funds to rehab the property.
19   And that's why he's been asking for this money all along.
20   You know, before we started this lawsuit, he's been in touch
21   with HSBC and trying to get them to agree to apply those
22   funds --
23         THE COURT:  But HSBC --
24         MR. KATZ:  -- to rehab.
25         THE COURT:  But HSBC is applying it to the money

Proceedings                                              31

1    outstanding.  I mean, that is not the case you brought

2    against HSBC here.  You know, that is a different theory.

3             MR. KATZ:  That's correct, Your Honor.

4             THE COURT:  HSBC, I do not know whether they have

5    used it to fix up the property or not?

6             MR. KATZ:  They did not.  They took -- they

7    applied it the amount that's in default.

8             THE COURT:  Yes.  Which they say they can do under

9    the terms of their agreement.

10            MR. KATZ:  Right, right.

11            THE COURT:  So I still make my point, which is

12   that I think you ought to -- the two parties ought to

13   seriously consider the plaintiff just dropping both the

14   complaint and the counterclaim.

15            Why don't you go back and discuss that with your

16   representative clients and report back to the Court a week

17   from today as to whether you can reach that resolution?

18            MR. KATZ:  I will do that, Your Honor.

19            THE COURT:  Okay?

20            MR. KATZ:  This is Samuel Katz, Your Honor.  I

21   will do that.

22            THE COURT:  All right.

23            MR. KATZ:  I just want to make one more point to

24   the Court:  That if the check would have been endorsed to

25   HSBC and to my client, my client would have had some

Proceedings                                    32

1   leverage by refusing to sign off on that check that HSBC

2   wanted to deposit to their account.  My client would have

3   had some leverage to try to convince them to use those funds

4   towards rehabbing the property.  And what happened here by

5   them getting all the money and, you know, without even

6   having my client sign off on that check, you know, that's

7   where my client had a loss.

8           THE COURT:  Without getting your client to sign

9   off on what check?

10          MR. KATZ:  The check that -- in other words, if

11  Citibank would have issued the $233,000 check to HSBC and to

12  my client, which would have required my client's

13  endorsement, as well as HSBC's, then HSBC would not have

14  been able to deposit those funds without my client's

15  cooperation.

16          THE COURT:  Well, you know, I do not know about

17  that.  But I still think the actual proposed resolution

18  makes sense, but obviously, neither side has to agree to

19  that.  I just ask you to consider it and get back to me.

20  Okay?

21          MR. KATZ:  I will, Your Honor.

22          THE COURT:  Mr. Goodman, are you --

23          MR. GOODMAN:  Yes, Your Honor, I will consult with

24  my client.

25          Did the Court want to send us a specific time and

Proceedings                                      33

1    date?

2            THE COURT:  Yes.  Why don't you just -- I mean, if

3    you resolve it, you can send a joint letter or, you know,

4    the parties can respond to the Court independently, if you

5    want.  But do it by next Friday, by noon of next Friday.

6    Okay?

7            MR. GOODMAN:  Yes.

8            THE COURT:  Okay.  Thank you very much, gentlemen.

9            MR. GOODMAN:  Thank you, Your Honor.

10            MR. KATZ:  Thank you, Your Honor.

11            MR. GOODMAN:  Stay safe, Your Honor.

12            THE COURT:  Okay.  Thank you, everyone.  Have a

13    good day.

14            We are adjourned.  Good-bye.

15            (Matter concluded.)

16

17                         --oo0oo--

18

19

20

21

22

23    *I (we) certify that the foregoing is a correct transcript*
      *from the record of proceedings in the above-entitled matter.*

24

25        */s/ David R. Roy*              *13th Day of March, 2021*
            *DAVID R. ROY*                       *Date*

*David R. Roy, RPR, CSR, CCR*
*Official Court Reporter*